**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Michelle Barth,<br><br>       Plaintiff,<br><br>    -v-<br><br>United States of America,<br><br>       Defendant. | 2:22-cv-1155<br>(NJC) (JMW) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

  Plaintiff Michelle Barth ("Barth") commenced this action against the United States of America ("United States" or the "government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680 for negligence stemming from an April 26, 2020 motor vehicle accident involving Barth and a United States Postal Service ("USPS") truck. (Compl. ¶ 1, ECF No. 1.) Barth claims that the April 2020 accident caused her to suffer injuries to her left and right shoulders; right wrist, elbow, and forearm; cervical, thoracic, and lumbar spines; pelvis; both hips; left knee and foot; and ribs. (Barth's Dep. Exs., ECF No. 39-1 at 14–18.) She also claims that the accident caused her to suffer various permanent injuries. (*See* Barth's Dep. Exs. at 19–20.) In order to prove these allegations, Barth designated one of her treating physicians, Dr. David J. Weissberg, as an expert witness to testify about the scope and cause of her injuries and her subsequent treatment.

  Before the Court is the government's Motion to Preclude the Expert Testimony of Dr. Weissberg on the issue of causation—i.e., whether the April 26, 2020 motor vehicle accident caused the alleged injuries ("Motion to Preclude"). (Not. Mot. Preclude Expert Test. Pl.'s Expert

Weissberg ("Mot."), ECF No. 36.) The government also moves to strike Barth's submission of a new affirmation and report from Weissberg, which were submitted in opposition to the Motion to Preclude (Weissberg Affirmation, ECF No. 36-12 at 3–6; Weissberg Report, ECF No. 36-12 at 7–9). For the reasons set forth below, the Weissberg Report and paragraphs 10 through 17 of the Weissberg Affirmation are struck, and the government's Motion to Preclude is granted in its entirety. Barth is precluded from offering testimony from Weissberg on the cause of her injuries and Weissberg may only offer testimony at trial on subjects within his personal knowledge developed during his treatment of Barth, including the nature and scope of Barth's injuries and his treatment for those injuries.

## FACTUAL BACKGROUND

### I.    April 26, 2020 Motor Vehicle Accident and Treatment

The motor vehicle accident at issue in this action occurred in the afternoon of April 26, 2020, in Commack, New York. (Barth Dep. 132:2–6, 134:4–19, ECF No. 36-3.) At the time of the accident, Barth was thirty years old. (Weissberg Med. Recs., ECF No. 36-10 at 2.) She testifies that she was driving at approximately fifteen miles per hour when a USPS truck that was attempting to make a U-turn suddenly pulled out in front of her. (Barth Dep. 139:5–7; 140:6–141:22.) According to Barth, she "slammed on the brakes" and "tried to turn away" but could not avoid a collision and the passenger corner or headlight of her vehicle hit the side of the USPS truck. (*Id.* 143:12–144:7; 145:22–146:6.) Barth testified that she was wearing her seat belt, that the airbags did not deploy, and that nothing in her vehicle got "knocked off or [] broken off from the impact," but also that her body "jolted forward" in the crash, causing her head and neck to experience "whiplash" and her face to hit the steering wheel. (*Id.* 149:9–151:13.)

Barth called her mother after the accident, and, within a minute or two, she got out of the vehicle without help. (*Id.* 154:9–24.) Police arrived five to ten minutes later. (*Id.* 158:13–18.) The police report does not indicate that Barth suffered any injuries. (Mem. L. Supp. Mot. Exclude Pl.'s Expert Weissberg ("Mem.") at 2, 4, ECF No. 36-2; *see also* Barth Dep., Ex, F at USAA-0018.) However, Barth testified that she was "in pain all over from stressing [her] body." (Barth Dep. 161:5–24.) Barth further testified that because the accident took place during the COVID-19 pandemic, she could not go to a hospital and the responding police officer did not offer to call an ambulance. (*Id.* 162:6–6.) Instead, according to Barth, the officer advised that if Barth's "pain [got] worse" she could go to the CityMD "emergency walk-in clinic." (*Id.* 163:3–21.) Afterwards, Barth drove away from the scene on her own. (*Id.* 164:15–17.)

Initially, Barth recalled seeking medical attention from the CityMD within the first three days of the accident, but upon having her memory refreshed with medical records, she testified that the first treatment she sought concerning injuries allegedly sustained on April 26, 2020, was around five weeks after the accident, on June 1, 2020. (*Id.* 164:10–16, 174:9–20.) Records from that medical visit show that Barth complained of "upper back pain," but that "no issues were reported from a full examination of [Barth's] systems: including her cervical, spine, hands, wrists, elbows, shoulders, and lumbar/sacral spine." (Mem. at 4 (citing Barth Dep., Ex. L at USAA-0665–69); *see also* Barth's Dep. Exs. at 145–47 (recording no erythema, swelling, deformity, or tenderness to hands, wrists, elbows, shoulders, and c-spine and lumbar/sacral spine).)

Several other doctors saw Barth over the following weeks. On June 6, June 26, June 30, and July 10, 2020, Barth received treatment from Dr. Anthony Rizzo, who diagnosed her with a cervical and shoulder sprain and somatic dysfunction in her cervical region, head, sacral spine,

hips, and rib. (ECF No. 36-5 at 3.) On July 21, 2020, Barth also began treatment with Dr.

Christopher Skurka, D.C., with whom she underwent recommended chiropractic treatments three

times per week until October 22, 2020. (ECF No. 36-6 at CS DC-0005, 0007–13.) Skurka

referred Barth for an orthopedic evaluation with Dr. Weissberg. (Weissberg Med. Recs. at LIOS-

0002.)

      In response to a subpoena for Barth's medical records, Weissberg's office—Long Island

Ortho Solutions—produced 66 pages of documents. (*See* Weissberg Med. Recs.) The office

certified under penalty of perjury that these documents represent the "complete copies of all

documents" within the office's "possession, custody, or control . . . referring or relating to copies

of the entire medical record . . . of [Barth]." (*Id.* at LIOS-0001.) The records include progress

notes from appointments spanning from July 28, 2020 to September 22, 2021 (*id.* at LIOS-0002,

0030), operative reports from a surgery on September 15, 2021, MRI reports, and patient ledgers.

(*See generally* Weissberg Med. Recs.)

      Barth's initial consultation with Weissberg occurred on July 28, 2020. (*Id.* at LIOS-

0002.) The treatment notes state that Barth "was in a MVC" (presumably referring to a "motor

vehicle collision/crash"), "on 4/26/20, driver + seatbelt, went to city md on 4/28/20, a postal

truck did an illegal u turn and patient hit her in passenger side." (*Id.*) The notes record the pain

and injuries that Barth reported and state that Barth's elbow pain "started immediately after

MVC worsened with lifting things." (*Id.*) The "[p]roblem [h]istory" section of Barth's past

medical history lists "chronic pain disorder" and "depression." (*Id.*)

      In his notes from Barth's September 18, 2020 medical visit, Weissberg states that Barth

"was in a MVC on 4/26/20" and opines that Barth's "left knee pain is *causally related* to the

MVC that occurred 4/26/20 due to ongoing compensating gate from the pain in her left foot."

4

(*Id.* at LIOS-0006, 0009 (emphasis added).)[1] In progress notes from Weissberg's evaluation of Barth on October 10, 2020 and April 13, 2021, Weissberg reiterated the same conclusion verbatim. (*Id.* at LIOS-0010, 0013, 00014, 0017.) In Weissberg's May 3, 2021 and September 15, 2021 operative reports he also opined that Barth injured her left and right shoulders "in an accident." (*Id.* at LIOS-0033, 0039, 0040, 0042.) The records do not include any further detail explaining how Weissberg arrived at these conclusions with respect to the cause of Barth's injuries.

Barth also received treatment from other medical providers at the same time that Weissberg was treating Barth. On March 8, 2021, Dr. Thomas Youm, M.D. evaluated and treated Barth's hips and shoulders. (ECF No. 36-7 at RYC Orthopedics-0003.) On May 19, 2021, her primary care physician, Dr. Marc Allen, examined her injuries. (ECF No 36-8 at MA MD-0007–08.) In this action, Barth alleges injuries to her left and right shoulders; right wrist, elbow, and forearm; cervical, thoracic, and lumbar spines; pelvis; both hips; left knee and foot; and ribs. (Barth's Dep. Exs. at 14–18.)

## II.    Barth's Prior Accidents and Injuries

The government submits evidence of four prior accidents or injuries that Barth sustained, none of which are recorded in Weissberg's records.

First, on September 7, 2002, when Barth was twelve years old, she was in the front passenger seat of a van being driven by her mother, when the van was "T-boned" on the

---

[1] The progress notes are signed by "Tom Heinisch PA (David Weissberg MD)," which suggests that the physician's assistant took notes on Weissberg's behalf. (Weissberg Med. Recs. at LIOS-0009.)

"passenger's side back," which "almost tipped [the] van." (Barth Dep. 55:2–56:17.) Following the accident, an insurance claim was filed in Barth's name for "SPRAIN/STRAINRIGHT WRIST PAIN," and "SHOULDER, RIGHT PAIN," though Barth does not remember sustaining any injuries to her shoulder as a result of the accident. (Barth Dep., Ex. G at Ins000036–37; Barth Dep. 54:13–20; 56:20–61:5.) Barth went to the emergency room immediately after the accident but did not seek any other medical care for her injuries. (Barth Dep. 59:24–60:13.) She treated her wrist injury by wrapping it in an "ACE bandage and then that was that." (*Id.* 60:17–19.)

Second, on August 11, 2013, at the age of 23, Barth received treatment from Premier Care of Commack for injuries sustained when she was "assaulted in the head." (Barth Dep. 62:22–25 (quoting medical records at Barth Dep., Ex H at CityMD-0014).) Barth testified that her sister hit her in the head with the sheath of a knife, leaving a gash on her head. (*Id.* 62:22–64:10.) Barth went to the hospital for stiches, and the treatment at Premier Care of Commack included removing sutures. (*Id.*)

Third, on June 30, 2014, at the age of 24, Barth received treatment from Premier Care of Commack after she was "thrown to the ground at Target." (Barth Dep. 67:3–10 (quoting medical records at Barth Dep., Ex. I at CityMD-0019).) According to those records, Barth "fell on her face" and "complain[ed] of pain in buttocks, shoulders, arms and neck." (*Id.* (quoting medical records at Barth Dep., Ex. I at CityMD-0019).) The records also indicate that Barth had "ecchymotic swollen and tender over right zygomatic arch," a "small ec[c]hymotic area over right shoulder" and right hand, an "ecchymotic area over left side of hip," and "paravertebral muscle spasm right side" to her lumbar/sacral spine. (Barth Dep., Ex. I at CityMD-0020–21.)

Finally, on March 6, 2017, Barth received treatment from the CityMD in Commack for left foot pain associated with an accident in which she fell down three stairs. (Barth Dep. 71:22–73:2.) According to the medical records, Barth "state[d] that she fell down the stairs and now cannot walk on her foot and . . . [there] is a lump in the middle of her left foot." (Barth Dep., Ex. J at CityMD-0034.) She was diagnosed with a foot fracture. (Barth Dep. 73:17–21.) Two days later, on March 8, 2017, Barth presented to the Southside Hospital emergency room complaining of left foot pain; an x-ray was taken, and Barth was diagnosed with a "transverse facture base of fifth metatarsal bone." (ECF No. 36-4 at SH MR-0004, 0103.)

The government also submits evidence of incidents that post-date Barth's injuries allegedly stemming from the April 26, 2020 car accident at issue in this action and the Weissberg records relating to Barth. First, the government cites an August 16, 2022 car accident, after which Barth was transported to the hospital by ambulance and the driver of the car passed away from his injuries. (*See* Mem. at 7.) According to Barth, she "smashed [her] face" in the accident and submitted an insurance claim related to her face, neck, and back injuries. (Barth Dep. 121:18–22, 125:11–126:19.) Medical records indicate that Barth was "unable to ambulate" in the emergency room after the 2022 accident. (ECF No. 36-4 at SH MR-0346.) Second, the government submits evidence that Barth used illegal drugs between 2007 and 2014, that she was treated with methadone and other prescription drugs daily from 2017 to 2022, and that she also used illegal drugs from 2021 until undergoing treatment in April 2023. (Mem. at 6 (citing Barth's deposition testimony).) The government argues that Barth's drug use may have contributed to her injuries, but offers in support only the facts that Barth experienced seizures in at least two different incidents in 2022 and was also involved in a 2022 police altercation that year. (*Id.*)

## PROCEDURAL HISTORY

Barth commenced this action on March 3, 2022. (Compl., ECF No. 1.) The case was originally assigned to District Judge Denis R. Hurley and then, after a random reassignment on July 12, 2022, to District Judge Frederic Block. (Elec. Order, Mar. 3, 2022; Elec. Order, July 12, 2022.) On August 4, 2022, Magistrate Judge James M. Wicks set a Scheduling Order for discovery pursuant to Rule 26(f), Fed. R. Civ. P. (ECF No. 12.) On October 23, 2023, while discovery was still ongoing, this action was reassigned to my docket. (Elec. Order, Oct. 19, 2023.) On February 5, 2024, Barth advised the government that she intended to call Weissberg as a treating physician in an expert disclosure exchanged pursuant to Rule 26(a)(2)(C), Fed. R. Civ. P. According to that expert disclosure, Weissberg would testify regarding Barth's injuries and treatment. (Weissberg Expert Disclosure at 2, ECF No. 36-9.) The report also indicated that Weissberg would "further testify that Ms. Barth's injuries are causally related to the subject incident." (*Id.*)[2] Discovery closed around two months later on April 15, 2024. (Elec. Order, Dec. 17, 2023.)

On May 7, 2024, the parties filed timely letters seeking a conference in anticipation of filing motions to exclude the testimony of each others' experts pursuant to Rules 702–05 of the Federal Rules of Evidence ("Fed. R. Evid.") and the *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), line of cases. (ECF Nos. 28–29.) The government's letter attached Weissberg's Expert Disclosure and Barth's letter attached the expert report produced by the government's expert. (*Id.*) Both parties filed timely opposition letters on or before May 15, 2025. (ECF Nos. 30–31.) On May 22, 2024, the Court granted the parties' requests for a pre-motion

---

[2] Although not at issue in this Memorandum and Order, Barth also served the expert report of Elaine R. Serina, Ph.D., P.E. (*See* ECF 29-1.)

conference and held a conference concerning the anticipated motions on May 31, 2024. (Elec. Order, May 22, 2024; Min. Entry, May 31, 2024.) After hearing argument from the parties, the Court set a briefing schedule on the government's anticipated Motion to Preclude and directed the parties to confer further on Barth's anticipated *Daubert* motion to exclude or limit the testimony of the government's proffered expert. (Min Entry, May 31, 2024.) After the conference, on June 5, 2024, Barth withdrew her application to file a *Daubert* motion. (ECF No. 32.)

Pursuant to the briefing schedule and the Court's recommended bundling practice, the parties filed their submissions on the government's Motion to Preclude on October 15, 2024. (Not. Mot.; Mem.; Mem. L. Opp'n Mot. Exclude Pl.'s Expert Weissberg' ("Opp'n"), ECF No. 36-11; Reply Mem. L. Supp. Mot. Exclude Pl.'s Expert Weissberg ("Reply"), ECF No. 36-13.) Alongside the government's Motion to Preclude, the government submitted the declaration of Assistant United States Attorney Robert W. Schumacher (ECF No. 36-2), attaching the following eight exhibits:

- the transcript of the deposition of Plaintiff Michelle Barth (ECF No. 36-3)[3];

- Barth's medical records received from the following entities and individuals:

  - Southside Hospital (ECF No. ECF No. 36-4);
  - Dr. Anythony Rizzo, D.O. (ECF No. 36-5);
  - Dr. Christopher Skurka, D.C. (ECF No. 36-6);
  - Dr. Thomas Youm, M.D. (ECF No. 36-7);
  - Dr. Marc Allen, M.D. (Ex. ECF No. 36-8);

- Barth's February 5, 2024 Expert Disclosure identifying Weissberg as a treating physician (ECF No. 36-9); and

---

[3] Schumacher attests that the Barth deposition transcript located at ECF No. 36-3 contains "accompanying exhibits" although none of those exhibits are actually located in that filing. (ECF No. 36-2.)

- 66 pages of medical records that the government received from Weissberg's office in response to a subpoena (ECF No. 36-10).

Along with her opposition brief, Barth submitted the declaration of Paul B. Edelman (ECF No. 36-12), with the Weissberg Affirmation (ECF No. 36-12 at 3–6) and Weissberg Report (ECF No. 36-12 at 7–9), both of which are dated September 24, 2024. In paragraphs 2 through 8 of his affirmation, Weissberg describes his treatment of Barth. (Weissberg Aff. ¶¶ 2–8.) He attests that on July 28, 2020, he "took a verbal history and Ms. Barth did not indicate any complaints of pain that immediately preceded this accident." (*Id*. ¶ 2.) Weissberg recounts his administration of an injection into Ms. Barth's right shoulder as well as his performance of surgeries on her shoulders and her reports of continued shoulder, wrist, and hip pain afterwards. (*Id*. ¶¶ 3–8.) In paragraph 9, Weissberg opines that "Barth is likely to have permanent [injuries]." (*Id.* ¶ 9.) In the remaining paragraphs, Weissberg expresses views predicated on his review of: (1) the medical records of doctors Rizzo, Skurka, Youm, and Allen, which were attached to the Schumacher Declaration; (2) the "relevant portions" of Barth's deposition testimony and accompany exhibits; and (3) the "relevant portions" of Barth's Southside Hospital records. (*Id.* ¶¶ 10–11.) Weissberg attests that "the opinions set forth in my records at the time of treatment, remain the same" following his review of these additional records. (*Id.* ¶ 12.) He further opines "to a reasonable degree of medical certainty, that the injuries to Ms. Barth's cervical, thoracic and lumbar spines, pelvis, right shoulder, left shoulder, right elbow and forearm, right wrist, right hip, left hip, left knee, and left foot were caused, aggravated or exacerbated by the accident of April 26, 2020." (*Id.* ¶ 16.)

In the Weissberg Report, Weissberg recounts his review of Barth's records, both those available to him during his treatment of her and other medical records, and opines with "a reasonable degree of medical certainty" that Barth's injuries "to her spinal region as well as

bilateral shoulders, bilateral hips, right wrist region, left foot region, and right elbow region . . . were directly and causally related to the motor vehicle accident of 4/28/20 and left her with a permanent disability." (*Id.* at 7–9.)

In its reply in support of its Motion to Preclude, the government moves to strike the newly filed Weissberg Affirmation and Weissberg Report in light of the fact that Weissberg's causation opinions in both documents are based on his review of medical records outside of the records he reviewed in the course of his treatment of Barth. (*See* Reply at 2.)

Because the government did not initially submit the "accompanying exhibits" to the transcript of Barth's deposition, on September 18, 2025, the Court ordered the government to submit these exhibits, which it did on September 19, 2025. (Elec. Order, Sept. 18, 2025; Barth's Dep. Exs.) The government's Motion is therefore fully briefed.

## LEGAL STANDARDS

Rule 702 governs the admissibility of expert testimony. The Supreme Court has made clear that the district court has a gatekeeping function under Rule 702: it is charged with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.[4]

First, expert testimony, like other evidence, is relevant under Rule 401, Fed. R. Evid., where it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Bustamante v. KIND, LLC*, 100 F.4th 419, 427 (2d Cir. 2024).

---

[4] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

Second, to determine whether expert testimony has a sufficiently reliable foundation to be admissible at trial, a court must consider the "indicia of reliability identified in [Rule] 702." *Clerveaux v. East Ramapo Cent. Sch. Dist.*, 984 F.3d 213, 233 (2d Cir. 2021). Rule 702 allows a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that":

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[5] Thus, the Court must determine whether: (1) the proposed expert is sufficiently qualified to testify about the proposed subject matter; (2) the expert's testimony is reliable; and (3) testimony about the proposed subject matter will assist the trier of fact. *See Nimely v. City of New York*, 414 F.3d 381, 395–97 (2d Cir. 2005).

---

[5] Rule 702 was amended effective December 1, 2023. "Nothing in the amendment imposes any new, specific procedures." Fed. R. Evid. 702, Advisory Committee Notes, 2023 Amendments. Instead, one purpose of the amendment was to emphasize that:

> [j]udicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support.

Fed. R. Evid. 702 advisory committee's notes to the 2023 amendments; *see also In Re: Acetaminophen – ASD-ADHD Prods. Liab. Litig.*, 22-md-2043, 2024 WL 3357608, at *13–14 (S.D.N.Y. July 10, 2024).

In addition to the indicia of reliability identified in Rule 702, a trial court may consider the criteria enumerated in *Daubert*, "some or all of which might prove helpful in determining the reliability of a particular scientific theory or technique." *Clerveaux*, 984 F.3d at 233. The *Daubert* factors are: (1) whether the methodology or theory has been or can be tested; (2) whether the methodology or theory has been subjected to peer review and publication; (3) the methodology's error rate and the existence and maintenance of standards controlling the technique's operation; and (4) whether the methodology or technique has gained general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593–94. "[W]hile a court need not consider the Daubert factors, it does not abuse its discretion in doing so." *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 124 (2d Cir. 2020) ("*Mirena II*").

Although "Rule 702 sets forth specific criteria for the district court's consideration, the *Daubert* inquiry is fluid and will necessarily vary from case to case." *Mirena II*, 982 F.3d at 123. The *Daubert* factors do not constitute a "definitive checklist or test." *Daubert*, 509 U.S. at 594. Proffered expert testimony can fail all four *Daubert* factors and still be admitted; however, in those circumstances, a court must "carefully scrutinize, pause, and take a hard look at the expert's methodology." *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 240 (S.D.N.Y. 2018) ("*Mirena I*"). So long as an expert's analysis is reliable "at every step," it is admissible. *Mirena II*, 982 F.3d at 123. But "*any* step that renders the analysis unreliable . . . *renders the expert's testimony inadmissible*." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (emphasis in original). Thus, it is not only *appropriate* for a district court "to take a hard look at . . . experts' reports"; rather, it is "*required* to do so to ensure reliability." *Mirena II*, 982 F.3d at 123 (emphasis added). "[I]n

13

deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* Ultimately, the district court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Although the Supreme Court in *Daubert* emphasized that the district court's inquiry under Rule 702 must focus "solely on principles and methodology, not on the conclusions that they generate," 509 U.S. at 595, it later clarified that "conclusions and methodology are not entirely distinct from one another." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("*Joiner*"). Thus, although:

> [t]rained experts commonly extrapolate from existing data[,] nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Id.* Where, however, an expert "otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support [for an expert's opinion] may go to the weight, not the admissibility of the expert's testimony." *Mirena II*, 982 F.3d at 124. A "minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Amorgianos*, 303 F.3d at 267. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

14

**DISCUSSION**

## I.    Motion to Strike the Weissberg Affirmation and Weissberg Report

As an initial matter, I consider the government's two arguments in support of its motion to strike the Weissberg Affirmation and Weissberg Report. (Reply at 2–3.) First, the government argues that discovery closed on April 15, 2024, and Barth "waited until after reading Defendant's instant motion" to submit a "self-serving and conclusory affidavit [from Weissberg] to purportedly cure the serious reliability issues raised about Dr. Weissberg's anticipated testimony." (*Id.* at 2.) Second, the government argues that because Barth identified Weissberg as a treating physician under Rule 26(a)(2)(C), Fed. R. Civ. P., Weissberg's "testimony must be based on '*his* personal knowledge . . . not from information acquired from outside sources.'" (*Id.* at 2–3 (quoting *Motta v. First Unum Life Ins. Co.*, No. 09-cv-3674, 2011 WL 4374544, at *3 (E.D.N.Y. Sept. 19, 2011) (emphasis in original).)

Different provisions of Rule 26 of the Federal Rules of Civil Procedure address the disclosure requirements for treating physicians as opposed to other experts. "It is well settled that a treating physician is not subject to the [expert] disclosure obligations set forth in Fed. R. Civ. P. 26(a)(2)(B)." *Davids v. Novartis Pharms. Corp.*, 857 F. Supp. 2d 267, 280 (E.D.N.Y. 2012); *see also D'Attore v. Salmon*, 572 F. App'x 17, 18 n.1 (2d Cir. 2014) ("The plain language of Federal Rule of Civil Procedure 26 . . . does not require a report for treating physicians."). Instead, disclosures concerning treating physicians are governed by Rule 26(a)(2)(C), which requires only disclosure of "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and "a summary of facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C); *Romanelli v. Long Island R.R. Co.*, 898 F. Supp. 2d 626, 630–31 (S.D.N.Y. 2012). The "key" is that a treating

15

physician not disclosed as an expert under Rule 26(a)(2)(B) may testify only to opinions formed based on "personal knowledge from consultation, examination and treatment of the Plaintiff, not from information acquired from outside sources." *Motta*, 2011 WL 4374544, at *3.

However, when a treating physician "seeks to render an opinion on causation, that opinion is subject to the same standards of scientific reliability" as for other experts. *Davids*, 857 F. Supp. 2d at 280. In addition, treating physicians are "not permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records." *Davids*, 857 F. Supp. 2d at 280; *see also Roman v. Sprint Nextel Corp.*, No. 12-cv-276, 2014 WL 5026093, at *10 (S.D.N.Y. Sept. 29, 2014) ("[T]he testimony of [a] treating physician[] will be limited to opinions [] actually formed during the course of treating the plaintiff . . . [and] [c]ourts in the Second Circuit have regularly held this includes opinions on causation."). As a result, a treating physician cannot testify about opinions formed based on "another physician's records, opinion or recommendations"; nor can the treating physician rely on information that was not acquired directly through the treatment of the plaintiff. *Motta*, 2011 WL 4374544, at *4; *see also Brutton v. United States*, 687 F. App'x 56, 58 (2d Cir. 2017) (holding that a treating physician "was not permitted to testify as a retained expert concerning information he learned *after* treating [the plaintiff]" (emphasis in original)).

Here, the information set forth in the Weissberg Report and the statements set forth in paragraphs 10 through 17 of the Weissberg Affirmation are based on Weissberg's review of Barth's deposition transcript and selected deposition exhibits, the records from Southside Hospital, and the records of doctors Rizzo, Skurka, Youm, and Allen. (Weissberg Aff. ¶¶ 10–17.) Weissberg makes no indication in either his affirmation or report that he ever reviewed any of these documents in "the course of [his] treatment" of Barth. *Davids*, 857 F. Supp. 2d at 280.

Notably, none of the documents in the 66 pages of records produced by Weissberg in response to a subpoena for all of the material in his possession concerning Barth show that Weissberg procured or reviewed records from Southside Hospital or from Rizzo, Skurka, Youm, and Allen while treating Barth.

Moreover, Weissberg's proffered opinions in the Weissberg Affirmation and Weissberg Report that none of the records from other providers alter the opinions set forth in his records at the time of Barth's treatment are also foreclosed because "courts will not admit supplemental expert evidence following the close of discovery when it expounds a wholly new and complex approach designed to fill a significant and logical gap in the first report." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.*, 769 F. Supp. 2d 269, 279–80 (S.D.N.Y. 2011). The Weissberg Affirmation and Weissberg Report were offered long after discovery closed on April 15, 2024. (*See* Elec. Order, Dec. 17, 2023.) Here, all of Weissberg's opinions set forth in the Weissberg Affirmation and Weissberg Report that are based on records outside of Barth's treatment offer "wholly new" evidence on causation not within the scope of Weissberg's initial expert disclosure as a treating physician. *Id.*

By contrast, paragraphs 1 through 9 of the Weissberg Affirmation pertain to Weissberg's treatment of Barth and therefore set forth facts and opinions that Weissberg may offer at trial, despite the fact that the Weissberg Affirmation was only provided to the Court in opposition to the government's Motion to Preclude. (*See* Weissberg Aff. ¶¶ 1–9.) To be clear, as a treating physician, Weissberg is not subject to the more rigorous disclosure requirements of Rule 26(a)(2)(B), Fed. R. Civ. P. *Davids*, 857 F. Supp. 2d at 280. The motion to strike the first nine paragraphs of the Weissberg Affirmation is therefore denied. *See Morritt v. Stryker Corp.*, No. 07-cv-2319, 2011 WL 3876960, at *12 (E.D.N.Y. Sept. 1, 2011) (denying a motion to strike a

17

treating physician's declaration produced after the close of discovery where the declaration pertained to opinions formed during treatment).

Accordingly, I grant the government's motion to strike the Weissberg Report and paragraphs 10 to 17 of the Weissberg Affirmation. I deny the motion to strike with respect to paragraphs 1 to 9 of the Weissberg Affirmation. Weissberg is therefore precluded from testifying at trial as to the facts and opinions set forth in the Weissberg Report and in paragraphs 10 through 17 of the Weissberg Affirmation, including any opinion that: (1) Barth's records from doctors Rizzo, Skurka, Youm and Allen, and Barth's deposition testimony and the exhibits submitted during the deposition do not alter "the opinions set forth in [his] records at the time of treatment," (Weissberg Aff ¶ 12); and (2) that all of the injuries detailed in the Weissberg Report "were directly and causally related to the accident of 4/28/20 and left [Barth] with permanent disability, which will limit her activities in the future and may require intermittent treatments in the future by physical therapist and/or chiropractors for the rest of her life" (Weissberg Rpt.).

## II.    Motion to Preclude

### A.    Weissberg is Precluded From Testifying as to Causation

The government argues that the Court should preclude Weissberg's causation opinion set forth in Barth's Expert Disclosure for Weissberg and in certain of Weissberg's records relating to Barth because it is based on his review of an incomplete medical history that did not include Barth's prior accidents or medical records and was therefore not "based upon reliable data and methodology." *Nimely*, 414 F.3d at 396–97; *see* Mem. at 14. Barth responds by relying on the Weissberg Affirmation and Weissberg Report, both of which were submitted only in opposition to the Motion to Preclude and most of which I have already struck. *See supra* Discussion § I. The Weissberg Affirmation indicates that after Weissberg reviewed the exhibits submitted by the

18

government in support of the Motion to Preclude—i.e., the records of doctors Rizzo, Skurka, Youm, and Allen, portions of Barth's deposition transcript and accompanying exhibits, and the Southside Hospital records—"the opinions set forth in [his] records at the time of treatment, remain the same." (Weissberg Aff. ¶ 12.) Thus, Weissberg appears to admit that he did not consider Barth's prior accidents or medical history when forming his original causation opinion.

Courts in this Circuit routinely preclude a treating physician's opinion testimony as to causation where the physician did not conduct a "meaningful '*differential diagnosis*' ruling out other possible contributing factors" to an injury. *Munafo v. Metro. Transp. Auth.*, No. 00-cv-0134, 2003 WL 21799913, at *18 (E.D.N.Y. Jan. 22, 2003) (emphasis added); *see also* Fed. R. Evid. 702 advisory committee's notes to the 2000 amendments (stating that, in assessing an expert's reliability, courts should determine whether the expert "has adequately accounted for obvious alternative explanations"). In other words, in order to meet the Rule 702(c) requirement that an expert's opinion be based on reliable principles and methods, a treating physician's opinion that something caused a particular injury must be supported by an analysis ruling out other "obvious alternative causes" and "provide a reasonable explanation for dismissing specific alternate factors identified by the defendant." *Munafo*, 2003 WL 21799913, at *18; *cf. Smith v. Gray*, No. 21-2035-CV, 2022 WL 1418973, at *2 (2d Cir. May 5, 2022) (summary order) (finding for purposes of summary judgment that "in the absence of an explanation of the basis for concluding that the injury was caused by the subject accident, and not by other possible causes evidenced in the record, an expert's [causation] conclusion . . . is mere speculation").

Here, prior to the April 2020 accident at issue in this case, Barth had previously sustained injuries to many of the same body parts that she alleges were injured in the April 2020 accident, including her left foot (which she fractured in her 2017 fall down the stairs), her shoulders, arms,

19

hip, and lumbar/sacral spine (which she injured in the 2014 assault), and her right wrist and shoulder (which she injured in the 2002 car accident). (Barth Dep. 54:13–20, 56:20–61:5, 67:3–10, 73:17–21.) The 66 pages of medical records produced by Weissberg's office list Barth's entire "[p]roblem [h]istory" as "chronic pain disorder" and "depression" and do not include any reference or records related to Barth's accidents and injuries from 2002, 2014, and 2017. (Weissberg Med. Recs. at LIOS-0002.) The record thus makes clear that Weissberg's opinion formed during treatment that several of Barth's injuries were caused by the April 2020 accident, as set forth in his progress notes from September 2020, October 2020, and April 2021 (Weissberg Med. Recs. at LIOS-0006, 0009–10, 0013–14, 0017), is *not* based on any consideration of whether the 2002 car accident, 2014 assault, and 2017 fall caused any of those injuries. Therefore, under Rule 702(b) and (c), Weissberg is precluded from offering at trial any opinions that "specifically negate" these "other alternative possible causes" of Barth's injuries. *Munafo*, 2003 WL 21799913, at *18; *see also Conde v. United States*, No. 19-cv-8506, 2021 WL 3604701, at *13 (S.D.N.Y. Aug. 13, 2021) (precluding causation opinion that failed to consider the plaintiff's "ten-year history with back pain").

On the basis of these same principles, the government's arguments that Weissberg's causation opinion is precluded by events that *post-dated* Weissberg's opinions as set forth in his progress notes from September 2020, October 2020, and April 2021 is unpersuasive. In forming his opinions in September 2020, October 2020, and April 2021, Weissberg was *not* required to consider injuries that Barth allegedly sustained *after* April 2021, which include the August 16, 2022 car accident and the 2022 injuries related to Barth's alleged drug use. Even had the car accident, seizures, and police altercation—all of which occurred in 2022—caused Barth to suffer physical injuries, the incidents post-date any injuries Barth experienced due to the April 2020 car

accident at issue in this action and all of Weissberg's medical records relating to Barth. (*See* Mem. at 6–7.) Therefore, these incidents are not relevant to any opinions Weissberg formed as set forth in the September 2020, October 2020, and April 2021 progress notes.[6]

Weissberg's causation opinion is also unreliable because it is "entirely conclusory." *Conde*, 2021 WL 3604701, at *13. In his medical records, Weissberg "opine[s] in a single sentence," *id.*, repeated verbatim without any explanation in three different progress notes, that Barth's "left knee pain is causally related to the MVC that occurred 4/26/20." (Weissberg Med. Recs. at LIOS-0009, 0013, 0017.) Barth's expert disclosure for Weissberg is no better, similarly stating in a conclusory fashion and without any explanation that Weissberg "will further testify that Ms. Barth's injuries are causally related to the subject incident." (Weissberg Expert Disclosure at 2.) The Weissberg Affirmation, which Barth submitted to bolster Weissberg's causation opinion, does not rectify these problems. Instead, in one of the paragraphs that I did not strike, Weissberg suggests that he made his causation determination because Barth "did not indicate any complaints of pain that immediately preceded [the April 2020] accident." (Weissberg Aff. ¶ 2.) Where a doctor's causation opinion is based solely on the plaintiff's "subjective reports of her history"—i.e., when symptoms began—the causation conclusion "render[ed] . . . [is] 'speculative' and 'conjectural.'" *Johnson v. United States*, No. 21-CV-2851, 2024 WL 1246503, at *6 (E.D.N.Y. Jan. 16, 2024) (concluding that a causation opinion

---

[6] It is not entirely clear from Weissberg's records when he formed his opinion regarding the permanence of Barth's injuries. In the Weissberg Affirmation, Weissberg reports that most of the treatment he provided Barth occurred on or before September 22, 2021. (Weissberg Aff. ¶¶ 2–7.) However, Weissberg reports that after that date, Barth returned for an appointment on October 27, 2023, at which she complained of right wrist and left hip pain and discussed possible surgery for the left hip. (*Id.* ¶ 8.) I need not determine precisely when Weissberg reached this opinion because Weissberg is precluded from offering any opinions as to causation for the reasons set forth in this Opinion and Order.

premised only on a "temporal relationship of the onset of symptoms in relation to [the] injury" was "entirely conclusory" when the expert did not consider alternative prior causes of the symptoms). This is particularly true here, where Barth admits that she was only driving fifteen miles per hour in the accident, but the Expert Disclosure, paragraphs 1 through 9 of the Weissberg Affirmation, and Weissberg's records for Barth fail to show that Weissberg considered the speed and positioning of the vehicles in the April 2020 accident or any other context relevant to his causation opinion. *See Conde*, 2021 WL 3604701, at \*13 (noting that the expert doctor had not considered the "context, i.e., the speed and positioning of the vehicles" in making his causation opinion). For all of these reasons, Weissberg's conclusory opinion is based on insufficient facts or data and therefore inadmissible under Rule 702(b) and is based on the application of unreliable principles and methods and therefore inadmissible under Rule 702(c).

Barth attempts to distinguish the caselaw discussed above by arguing that Weissberg "was not deposed, and a narrative report was not exchanged." (Opp'n at 5.) Barth also argues that in *Johnson*, *Conde*, and *Munafo*, "the experts all testified that their opinion as to causation would be affected or changed in some way, by the information they failed to consider at the time of their report." *Id.* at 6; *see, e.g.*, *Johnson*, 2024 WL 1246503, at \*6 (noting that the expert had admitted that the existence of symptoms prior to the accident "negates what I'm stating in my narrative").

None of these arguments are persuasive. As noted above, as a treating physician, Weissberg is not required to submit the more lengthy report required by Rule 26(a)(2)(B) for experts who are not treating physicians. Nevertheless, even treating physicians disclosed under Rule 26(a)(2)(C) are barred from offering opinions that fail to meet the reliability requirements of Rule 702(b) and (c). Moreover, the "proponent of the expert testimony has the burden to

establish [the] admissibility requirements." *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016). Here, nothing in Barth's Expert Disclosure, paragraphs 1 through 9 of the Weissberg Affirmation, or Weissberg's records relating to Barth show that Weissberg considered any potential cause of Barth's injuries other than the April 2020 car accident, and these documents include only conclusory bases for Weissberg's causation opinion. Accordingly, Weissberg's opinion that the April 2020 motor vehicle accident caused any of Barth's injuries "is connected to existing data only by the *ipse dixit* of" Weissberg. *Joiner*, 522 U.S. at 146.[7]

Finally, Barth argues that if Weissberg is precluded from testifying as an expert witness, Weissberg should be permitted to offer his causation opinions as a fact witness. (Opp'n at 9.) It is true that "a treating physician who testifies as a fact witness can opine on causation, severity, disability, permanency and future impairments as part of the doctor's explanation of treatment." *Ali v. Connick*, No. 11-cv-5297, 2016 WL 3002403, at *7 (E.D.N.Y. May 23, 2016). However, even when testifying as a fact witness, the treating physician who was not disclosed under Rule

---

[7] Barth makes several other arguments in support of Weissberg's causation opinion, none of which address the fact that the opinion is based on insufficient facts and data and unreliable principles and methods, and is therefore inadmissible under Rule 702(b) and (c). First, Barth relies on the Weissberg Affirmation and Weissberg Report, where Weissberg opines that, after review of records from Barth's other medical providers, he retains the opinion that the April 2020 car accident caused injuries to: Barth's  left and right shoulders; right wrist, elbow, and forearm; cervical, thoracic, and lumbar spines; pelvis; both hips; left knee and foot; and ribs. (Weissberg Aff. ¶ 16.) However, the Weissberg Report and the relevant paragraphs of the Weissberg Affirmation are stricken and I do not consider them. *See supra* Discussion § I. Second, Barth argues that Weissberg treated Barth "for over three years" and his opinions are based on a range of objective testing, MRI studies, and surgical findings. (Opp'n at 8.) However, Weissberg's testimony regarding the nature and scope of Barth's injuries is not in dispute, nor are his qualifications as a medical doctor and orthopedic surgeon. (Weissberg Aff. ¶¶ 1, 4, 6.) Therefore, Weissberg may testify regarding his observations of Barth's injuries and the treatments he provided, including injections and surgeries, but Weissberg's multi-year treatment of Barth does not cure the fact that his causation opinions are based on insufficient facts and data and through the application of unreliable principles and methods.

26(a)(2)(B) is limited to testifying about "information he/she has acquired through observation of the Plaintiff in his/her role as a treating physician and limited to the facts in Plaintiff's course of treatment," and "must not include testimony with regard to another physician's records, opinion or recommendations" *Id*. Moreover, "classifying [a treating physician] as a fact expert does not relieve this Court of its duty to ensure she utilized reliable methods in reaching her opinion." *N.K. by Bruestle-Kumra v. Abbott Lab'ys*, No. 14-cv-4875, 2017 WL 2241507, at *8 (E.D.N.Y. May 22, 2017), *aff'd*, 731 F. App'x 24 (2d Cir. 2018) (concluding on this basis that a treating physician's causation opinions were precluded); *see also In re Zypreza Products Liability Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (noting that in certain circumstances, an expert witness may serve as a fact witness, subject to the requirements of Rule 701, Fed. R. Evid.). Under Rule 701, however, any fact witness testimony must not only be helpful to determining a fact at issue (or to understanding the witness's testimony), but it also must be "rationally based on the witness's perception" and may *not* be based on "scientific, technical, or other specialized knowledge." Fed. R. Ev. 701. Here, any fact testimony by Weissberg as to the cause of Barth's injuries falls outside the ambit of Rule 701 because it necessarily would be based on his specialized knowledge and experience as a medical doctor and orthopedic surgeon and because it would *not* be a fact that is simply "rationally based" on his perception when Weissberg did not consider the "obvious alternative causes" of the injuries set forth in the record. *Munafo*, 2003 WL 21799913, at *18.

Accordingly, I grant the government's Motion to Preclude in its entirety. Weissberg may not testify as to the cause of Barth's injuries, including the injuries identified in the Expert Disclosure, paragraphs 1 through 9 of Weissberg's Affirmation, and in Weissberg's records relating to Barth. Weissberg may testify on issues unrelated to causation that arise out of his

24

treatment of Barth, including the nature and severity of Barth's injuries and the treatment and procedures he performed.

### B.   A Daubert Hearing is not Necessary

Barth requests that the court hold "a *Daubert* hearing to further assess the reliability of Dr. Weissberg's findings and opinion as to causation." (Opp'n at 9.) Such a hearing is unnecessary on the record on the Motion to Preclude.

District courts possess "latitude in deciding *how* to test an expert's reliability, and to decide whether or when . . . proceedings are needed to investigate reliability." *Kumho Tire Co.*, 526 U.S. at 152 (emphasis in original). Therefore, the Second Circuit has recognized that "[w]hile the gatekeeping function [of Rule 702 and *Daubert*] requires the district court to ascertain the reliability of [an expert's] methodology, it does not necessarily require that a separate hearing be held in order to do so." *United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007); *see also United States v. Ashburn*, 88 F. Supp. 3d 239, 244–45 (E.D.N.Y. 2015) ("Nothing requires a district court to hold a formal *Daubert* hearing in advance of qualifying an expert witness."); *In re Elec. Books Antitrust Litig.,* No. 11–md–2293, 2014 WL 1282293, at *32 (S.D.N.Y. Mar. 28, 2014) (same). For example, where a court is persuaded by the decisions of other courts that testimony of the sort proffered is inadmissible under *Daubert*, there is "no need to duplicate the considerable efforts of those courts." *Ashburn*, 88 F. Supp. 3d at 245.

Applying these standards here, a *Daubert* hearing is unnecessary to assess whether Weissberg may opine at trial about the cause of Barth's injuries. I am persuaded by other courts in this Circuit that have precluded treating physicians from providing expert testimony as to the cause of an injury where the treating physician did not conduct a "differential diagnosis"—that is, the physician did not take steps during the course of treatment to rule out other possible

contributing factors to the injury. *See supra* Discussion § II.A. Likewise, as already established, Weissberg cannot testify at trial as to any opinions formed based on records that he did not consider at the time he originally treated Barth. *See supra* Discussion § I. Putting these two conclusions together, a *Daubert* hearing would not reveal any information that would enable Weissberg to salvage his proffered opinions that rule out possible contributing factors to Barth's injuries, which Weissberg did not actually consider in his original diagnosis. Moreover, Barth was "fully aware of the substance of [the government's] *Daubert* challenge" to the admissibility of Weissberg's causation opinion, and nevertheless, Barth submitted the Weissberg Affirmation, which fails to provide any further support for Weissberg's opinions reached after his belated review of records from doctors Rizzo, Skurka, Youm, and Allen and the Southside Hospital records. *See Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 351 (S.D.N.Y. 2005) (declining to hold a *Daubert* hearing concerning the admissibility of testimony from a treating physician).

Accordingly, a *Daubert* hearing is unnecessary here and would be duplicative of *Daubert* hearings held by other courts considering similar causation testimony by treating physicians who were not disclosed under Rule 26(a)(2)(B) and who failed to conduct a differential diagnosis during the course of treatment to rule out other possible contributing factors to the injury before reaching a causation opinion.

## CONCLUSION

For the reasons set forth above, the Weissberg Report and paragraphs 10 through 17 of the Weissberg Affirmation, are struck, and the government's Motion to Preclude (ECF No. 36) is granted in its entirety. Barth is precluded from offering testimony from Weissberg on the cause of her injuries. Weissberg may only offer testimony at trial on subjects within his personal

knowledge developed during his treatment of Barth, including the nature and scope of Barth's injuries and his treatment for those injuries.

Dated:  Central Islip, New York
            September 29, 2025

                                             /s/ Nusrat J. Choudhury
                                            NUSRAT J. CHOUDHURY
                                            United States District Judge

27